In the Matter of the Estate of
Elvada E. Roley, Deceased.

Kenneth L. ROLEY,
former personal representative of the Estate of
Elvada E. Roley, Deceased,
*Appellant,*

*v.*

Christopher P. SAMMONS,
*Respondent.*

Marion County Circuit Court
01C19332; A130345

170 P3d 1067

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Shelley Chrystal Mactyre argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Landau and Sercombe, Judges.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff, Kenneth L. Roley, appeals a declaratory judgment of the probate court that construes his mother's will. He assigns error to the probate court's interpretation of the will to require a division of the estate between plaintiff and his nephew, defendant Christopher P. Sammons. Plaintiff also assigns error to the probate court's order removing him as the personal representative of the estate on the ground of conflict of interest. We affirm the declaratory judgment as to the will construction and reverse the order removing plaintiff as the personal representative.

Testator, Elvada E. Roley, executed her will in May 1997, and died in September 2001. The will contained the following provisions relevant to this dispute:

"II.

"I declare that I am unmarried. I have three children now living; namely JUNE JOAN MELTON, KENNETH LYNN ROLEY, and STEVEN KEVIN ROLEY.

"III.

"To my son, STEVEN KEVIN ROLEY, I give my 44.3 acre farm described on Exhibit A attached hereto and made a part hereof. If STEVEN KEVIN ROLEY should not survive me, his share of my estate shall go to JUNE JOAN MELTON and KENNETH LYNN ROLEY equally.

"IV.

"To my son KENNETH LYNN ROLEY, I give the following:

"A. The vendor's interest, along with the right to receive the contract payments in that certain contract dated February 21, 1986, between Harold J. Roley and Elvada E. Roley, husband and wife, as seller, and David M. Howe and Shawn Marie Howe, husband and wife, and Milton J. Howe, and Dorothy J. Howe, husband and wife, as purchasers, recorded in the records of Clackamas County under fee No. _____; and

"B. My two lots in Prineville, Oregon, described as follows: OCHOCO West, Lot 3, Block 21, and Lot 5, Block 21, Crook County, City of Prineville, State of Oregon.

"C.   If KENNETH LYNN ROLEY does not survive me, his share of my estate shall go to his child or children equally, share and share alike.

## "V.

"To my daughter, JUNE JOAN MELTON, I give my residence located at 924 South Fir Court, Canby, Oregon 97013, further described as follows:

"Lot 11, R. D. WEYGANDT'S ADDITION, in Clackamas County, Oregon,

"together with any household furnishings she desires. If JUNE JOAN MELTON does not survive me, then her share shall go to her surviving children, share and share alike, except the share that would go to RANDALL M. SAMMONS shall go to JUNE'S son, CHRISTOPHER PAUL SAMMONS, knowing he will use that share for RANDALL'S necessities.

## "VI.

"It is my desire that JUNE JOAN MELTON and KENNETH LYNN ROLEY have equal shares of my estate including the specific bequest I have made to them in Sections IV and V respectively. I therefore direct my Personal Representative to divide all remaining assets of my estate in a manner that their total shares be of equal value. My personal representative may sell any assets, if necessary to have funds to equalize these shares.

"If there are any disputes arising out of the distribution of my estate, my personal representative shall have the full authority to resolve any of said disputes, and the decision of my personal representative shall be binding on my heirs.

## "VII.

"I hereby nominate, constitute, and appoint my daughter, JUNE JOAN MELTON, as personal representative of this, my Last Will and Testament, to serve without bond.

"If JUNE JOAN MELTON is deceased, unable, or unwilling to serve as personal representative, I hereby nominate, constitute, and appoint my son, KENNETH LYNN ROLEY, as alternate personal representative of this, my Last Will and Testament, to serve without bond."

(Uppercase in original.)

In September 2000, Randall Sammons, testator's grandson, died from a chronic illness. In October 2000, testator gave Steven the 44.3-acre farm that she had devised to him in section III of her will. In March 2001, testator sold the Canby residence that she had devised to June in section V of the will. The funds from the sale of that residence were commingled with testator's other assets and utilized for her care. In April 2001, five months before testator's death on September 24, 2001, June died.

Thus, by the time the will was submitted to probate, the particular devise to Steven had been satisfied and the specific bequest of the Canby residence to June had failed by ademption. All that remained was to distribute the residue of the estate by the terms of section VI of the will. The parties' disagreement about the operation of that part of the will is at the core of their dispute.

Because of June's death, plaintiff was appointed personal representative of the estate pursuant to section VII of the will. In that capacity, plaintiff filed an account and a distribution petition in which he sought to distribute all of the residue of testator's estate to himself. Defendant opposed that petition and argued that he was entitled to his mother's one-half share in the residue. At the same time, defendant filed a motion to remove plaintiff as personal representative of testator's estate because of an alleged conflict of interest. After a hearing, the court granted defendant's motion to remove plaintiff as the personal representative and declared that defendant was entitled to his mother's one-half share in the estate.[1]

On appeal, plaintiff raises two assignments of error. Plaintiff argues that the probate court erred in ruling that (1) defendant is entitled to take his mother's one-half interest in the remaining assets of the estate,[2] and (2) plaintiff should

---

[1] This appeal has a complicated procedural history. Two previous appeals were dismissed for lack of an appealable judgment. The current proceedings arose from a petition for declaratory relief filed in 2005. The parties agreed to incorporate the record of the earlier proceedings into the declaratory judgment record. Some of the earlier findings of the probate court were used in the rulings that led to the judgment under review.

[2] The probate court found that the specific devise of the Canby residence to June failed because testator sold that property during her lifetime and that the

be removed as personal representative because there was a conflict between plaintiff's interests and the interests of the estate. The main dispute in the first assignment of error concerns the proper disposition of June's share of the residue of the estate under section VI of the will in light of the fact that she predeceased testator. Plaintiff contends that the share goes to him as the surviving residuary beneficiary. Defendant argues that the share devolves to him as June's surviving child under the survivorship provision in section V of the will.

■     As a preliminary matter, plaintiff contends that part of section VI of the will gives him the exclusive right to make decisions regarding the meaning of the will and that his interpretation of the will is thus binding on the parties and the court. That portion of the will provides:

> "If there are any disputes arising out of the distribution of my estate, my personal representative shall have the *full authority* to resolve any of said disputes, and the decision of my personal representative shall be binding on my heirs."

(Emphasis added.) Based on that language, plaintiff argues that the probate court should not have engaged in an interpretation of testator's will because only he has the authority to resolve any disputes. Stated another way, plaintiff contends that section VI of the will gives the personal representative the exclusive authority to determine the intended distribution of testator's estate when a dispute arises.[3]

Assuming that the difference between the parties about the construction of the will is a "dispute" within the meaning of section VI, and that testator intended a final resolution of that kind of a dispute by the personal representative, the issue becomes whether testator's empowerment of

---

devise could not be saved by the nonademption statute, ORS 112.385. The parties do not challenge that part of the court's ruling on appeal.

[3] We presume that the controversy about the textual meaning of the will is a dispute "arising out of the distribution of [the] estate." The provision could be construed to allow the personal representative exclusive authority to resolve only administrative factual disputes about the manner in which the estate is distributed, rather than more substantive legal disputes about the construction of the terms of the will. Since neither party advances that construction of section VI of the will, we do not narrow its meaning to exclude disputes about the meaning of the words of the will.

the personal representative can be given legal effect in this case. For the reasons explained below, we hold that this type of dispute resolution provision in a will does not displace the statutory duty of the probate court to determine and enforce the intention of the testator as shown by the plain meaning of the will. Because testator's intended disposition of her estate is clear on the face of the will, and statutes require the probate court to exercise its authority to carry out that intent, the court did not err in directing the dispositions intended by testator, notwithstanding the contrary determination by the personal representative.

ORS 111.095(2) confers on the probate court,

> "*full, legal and equitable powers* to make declaratory judgments, as provided in ORS 28.010 to 28.160, in all matters involved in the administration of an estate, including those pertaining to * * * the distribution of the estate."[4]

(Emphasis added.) Furthermore, the statutes governing declaratory judgment actions provide that persons interested in the administration of a decedent's estate may obtain a declaration of rights or legal relations to determine questions regarding the construction of wills.[5] Those statutes confer unrestricted authority on the probate court to interpret all wills in declaratory judgment actions. There is no suggestion anywhere in those statutes that the court's authority should be limited to construe only certain wills, *i.e.*, those for which a testator has not made a different arrangement.

Moreover, the jurisdiction of the probate court extends to the "[s]upervision and disciplining of personal representatives, guardians and conservators." ORS 111.085(8). ORS 112.227 sets the lodestar for the administration of a will: "[t]he intention of a testator as expressed in the will of the testator controls the legal effect of the dispositions of the

---

[4] ORS 111.085(6) also provides that the jurisdiction of the probate court includes "[c]onstruction of wills, whether incident to the administration or distribution of an estate or as a separate proceeding."

[5] *See* ORS 28.020 ("Any person interested under a * * * will * * * may have determined any question of construction or validity arising under any such instrument * * *."); ORS 28.040 ("Any person interested * * * in the administration of * * * the estate of a decedent * * * may have a declaration of rights or legal relations in respect [to] * * * questions of construction of wills * * *.").

testator." The supervisory duties of the probate court under ORS 111.085(8) function, in part, to ensure that the personal representative distributes the estate in accordance with the "intention of the testator as expressed in the will." Therefore, the probate code requires judicial implementation of the testator's choices through the exercise of the court's supervisory powers or authority to construe the will.

Thus, a probate court has the statutory duty to construe a will and to supervise a personal representative in order to give effect to the dispositional intent of a testator. Where the wording of the will is clear on "the legal effect of the dispositions of the testator" under ORS 112.227, those duties of a probate court cannot be usurped by private delegation to someone else under the terms of a will. Plaintiff concedes that the probate court's power to enforce the unambiguous terms of the will is not affected by the dispute resolution provision in the will. Because the dispositional intent of the testator here is plain from the face of the will, the court's power to determine and enforce that intent is not affected by the contrary choice of the personal representative under section VI of the will.[6]

■　　Turning to the construction of the will, the probate court correctly determined "[t]he intention of a testator as expressed in the will." ORS 112.227. *See also Kidder v. Olsen,* 176 Or App 457, 463, 31 P3d 1139 (2001) ("It is a well-established principle in Oregon that '[t]he intention of a testator, as expressed in his will, is * * * the controlling factor in its construction * * *.' " (Alteration in original.)). In construing a testator's intentions, courts prefer a construction that will give harmonious effect to every part of the will. *Pioneer Trust v. Thielsen,* 199 Or 206, 213, 258 P2d 788 (1953).

■　　Sections V and VI of the will frame the disagreement of the parties on the intention of the testator should June predecease her. After providing for the devise of the Canby house to June, section V provides, in part, that "[i]f JUNE JOAN MELTON does not survive me, then *her share shall go*

---

[6] We do not decide whether a testator could delegate final dispute resolution authority to a personal representative for disputes about provisions of a will where the testator's intent is not readily discernable from the text and context of the provision.

*to her surviving children,* share and share alike * * *." (Uppercase in original; emphasis added.) Section VI states that "[i]t is my desire that JUNE JOAN MELTON and KENNETH LYNN ROLEY have *equal shares of my estate* including the specific bequest I have made to them in Sections IV and V respectively." (Uppercase in original; emphasis added.)

Plaintiff argues that the court should read those sections in isolation of one another. In doing so, the words "her share shall go to her surviving children," as used in section V, would refer only to the specific devise of the Canby residence to June. Therefore, according to plaintiff, testator intended only for the Canby residence to pass to June's heirs and not her "share" of the remaining assets of the estate because testator did not use similar language in section VI. Plaintiff asserts that the fact that testator used specific language in one section and not another evidences testator's specific intent that June's share of the remaining assets of the estate should not pass to her heirs. We disagree with that interpretation.

As the probate court aptly found, the will stated precisely what would happen to June's shares if she predeceased testator. The court determined in its letter opinion:

"The Court disagrees with [plaintiff] that the will does not address what happens if June predeceased the testator. Indeed, it says exactly what to do: 'If JUNE JOAN MELTON does not survive me, then *her share* shall go to her surviving children, share and share alike.' * * * The language of this clause contradicts [plaintiff's attorney's] argument that the clause qualifies only the specific bequest. The phrase 'her share' makes no sense if it refers only to the specific bequest of the residence—under the terms of the will, June Melton was to take the entire residence. The only way those words (her share) make any sense is if they also qualify paragraph VI which does speak of 'shares.' "

(Emphasis in original.)

We agree with the reasoning of the probate court. The issue is the meaning of "her share" in section V. The will categorizes the devises to each of the children as a "share" of the estate. The will announces survivorship rights to that

"share" for each of the children. As the court observed, share" is used in section VI to mean more than a specific bequest. It means a half portion of the net estate after the bequest to Steven. It gives a harmonious effect to all parts of the will to interpret "share" to have a consistent meaning throughout the will. June's "share" under section VI (half of the estate) is the same as her "share" under section V (which devolves to her surviving children).

Thus, June's "share" includes the particular bequest in section V, her portion of the devise to Steven under section III if Steven predeceased testator, and her part of the residue of the estate under section VI. Any different reading—that her "share" means only the bequest in section V and plaintiff's "share" means only the bequests in section IV—would create a lapse if both June and Kenneth were to predecease testator. Under plaintiff's reasoning, if June and Kenneth were to die before testator, the devise of the residue to June and Kenneth would lapse because the will provides only for survivorship for the specific bequests in sections IV and V. Although the devises would be governed by the anti-lapse statute in such a case,[7] a construction of the will that avoids a lapse or intestacy is preferred. *Jorgensen v. Pioneer Trust Co. et al.*, 198 Or 579, 595, 258 P2d 140 (1953) (presumption that testator intended to dispose of the entire estate).

The probate court did not err in concluding that the plain meaning of the will is to provide for particular survivorship rights for each share of the estate if any beneficiary predeceased the testator. Defendant succeeded to the rights of June under the will.

■ In plaintiff's second assignment of error, he contends that the probate court erred in removing him as personal representative of the estate. The precedents conflict on our standard of review regarding a probate court's decision to remove a personal representative. In *Holst v. Purdy*, 117 Or App 307,

---

[7] ORS 112.395 provides, in part:

"When property is devised to any person who is related by blood or adoption to the testator and who dies before the testator leaving lineal descendants, the descendants take by representation the property the devisee would have taken if the devisee had survived the testator, unless otherwise provided in the will of the testator."

311, 844 P2d 229 (1992), we held that a *de novo* standard of review is used. By contrast, in *Wharff v. Rohrback*, 152 Or App 68, 72, 952 P2d 87 (1998), we determined the standard of review to be "abuse of discretion." It is not necessary to resolve that conflict in this case. Even under the more deferential "abuse of discretion" review, the probate court erred in removing plaintiff as the personal representative.

The grounds for removing a personal representative are expressed in both statutes and cases relating to the equitable authority of the probate court. ORS 113.195 defines the circumstances for mandatory and permissive removal of a personal representative. ORS 113.195(1) requires removal when the personal representative "ceases to be qualified as provided in ORS 113.095, or becomes incapable of discharging duties." In contrast, removal under ORS 113.195(2) is discretionary and permits removal "[w]hen a personal representative has been unfaithful to or neglectful of the trust * * *." Thus, the discretionary authority of ORS 113.195(2) may be exercised when the past conduct of the personal representative shows unfaithfulness or neglect.[8]

■■  A probate court also has equitable authority to remove a personal representative for a conflict of interest in making past or future decisions affecting the estate. The law is summarized in *Wharff*:

> "The personal representative of an estate has a fiduciary duty to the beneficiaries of the estate. ORS 114.265. The personal representative must be in a position to act indifferently in matters of the estate, *In re Estate of Mills*, 22 Or 210, 212, 29 P 443 (1892), and a conflict between the interest of the personal representative in a personal capacity and the interest of the estate may be a basis to remove a personal representative. *See Vander Galien v. Vander Galien*, 47 Or App 233, 236, 614 P2d 127 (1980) * * *. Whether a personal representative should be removed must be decided on the particular facts of the case. *In re Elder's Estate*, 160 Or 111, 117, 83 P2d 477 (1938). The question is whether there is a substantial and bona fide

---

[8] A personal representative may also be removed when he or she fails to inform the probate court of the representative's conviction of a felony. ORS 113.092(2).

claim of interest in the estate adverse to the interest of the personal representative."

152 Or App at 72.

In *Wharff*, we overturned a refusal to remove a personal representative because the representative's personal interests conflicted with those of the estate. The personal representative was the decedent's mother and the driver of the car in which her daughter died. The estate had a potential wrongful death claim against the personal representative and a pending settlement with a third-party tortfeasor. Because the personal representative could not objectively evaluate the merits of the potential claim and the proposed settlement, we reversed the trial court's order denying a motion to remove the mother as personal representative. *Id.* at 74.

Similarly, in *Bean v. Pettengill*, 57 Or 22, 109 P 865 (1910), the Supreme Court affirmed the removal of a personal representative when the estate had a potential claim against the personal representative based on misappropriation of assets. In *In re Faulkner's Estate*, 156 Or 23, 28, 65 P2d 1045 (1937), the removal of a personal representative was warranted because there was sufficient evidence to suggest that the personal representative had fraudulently transferred stock and intentionally concealed assets. That evidence satisfied the court that a beneficiary of the estate had a substantial and bona fide claim of interest in the estate adverse to that of the personal representative and that removal was necessary. *Id.* at 28.

■ In sum, removal is justified under ORS 113.195 when past conduct of the personal representative shows unfaithfulness or neglect of the trust or, under the equitable authority of the court, when the personal interests of the personal representative conflict with a substantial and legitimate interest of a beneficiary of the estate. None of those grounds exists in this case. There is no past conduct of plaintiff that is unfaithful or neglectful of the estate; there is merely a difference of opinion about the meaning of the will. Nor is there any remaining difference between plaintiff and defendant on the distribution of the estate.

■ The decision of the probate court interpreting the will decides the course of the administration of the estate. There was no showing that plaintiff would act inconsistently with that decision. There is a "strong statutory and common law preference to defer to the designation of a personal representative made by the testator." *Holst*, 117 Or App at 311. On this record, it was an abuse of discretion to remove plaintiff as the personal representative in the absence of past culpable conduct by plaintiff or future risk to the estate by plaintiff's antagonistic interests or likely conduct.

Reversed and remanded with instructions to reinstate plaintiff as personal representative; otherwise affirmed.